## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LILLIAN VARGAS,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>WALMART SUPERCENTER STORE #4276,<br><br>　　　　Defendant. | CIVIL ACTION NO. 3:22-CV-01642<br><br>(Magistrate Judge Latella) |

### MEMORANDUM

This matter comes before the Court on the Defendant, Walmart Supercenter's Motion for Summary Judgment. For the reasons that follow, the Motion will be **DENIED**.

**Procedural Background**

This matter was initiated by the Plaintiff, Lillian Vargas, by the filing of a Complaint alleging negligence on the part of the Defendant, Walmart Supercenter Store #4276, in the Court of Common Pleas of Lackawanna County on September 22, 2022. The Defendant filed a Notice of Removal on October 19, 2022. (Doc. 1). An Answer to the Complaint was filed on October 31, 2022. (Doc. 5). On September 5, 2024, the Defendant filed a Motion for Summary Judgment, (Doc. 37), supporting brief, (Doc. 38), and Statement of Facts, (Doc. 39). On October 2,

1

2024, the Plaintiff filed a brief in opposition to the Motion, (Doc. 43), and Answer to Defendant's Statement of Facts, (Doc. 44). The Motion is ripe for disposition.

**Background**

The facts of in this matter are relatively straightforward and uncomplicated. The parties agree that on October 6, 2020, the Plaintiff, Ms. Vargas, was a customer at the Wal-Mart Supercenter, store #4276, in Taylor, Pennsylvania. It is further undisputed that while checking out, she slipped (and/or tripped) and fell in the area of the checkout registers. There is also no dispute that prior to the fall, a Wal-Mart employee placed a "closed" sign and chain on the ground in the checkout area. Here is where the parties begin to part company. The Complaint alleges that: "As the Plaintiff was completed [with] her shopping transaction at the cash register, she reached for her bags to leave when suddenly, and abruptly Plaintiffs right foot/ankle became entangled with the closed aisle chain, thereby causing [her] to strike the floor and sustain severe bodily injuries." (Doc. 1-1, p. 4). Defendant points to a surveillance video of the event and concludes that at various times prior to the fall, Plaintiff looked down at the sign/chain, seemed to walk around it and at times placed her foot on the sign. (Defendant's Statement of Facts, p. 2). Accordingly, Defendant maintains that any danger was open and obvious, and Plaintiff voluntarily assumed the risk. Plaintiff, in turn states she did

not look down at the sign/chain and was unaware of its existence prior to the fall. (Plaintiff's Answer to Defendant's Statement of Facts, Doc. 44, p. 2).

**Summary Judgment Standard**

A court may only grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court's role in deciding a motion for summary judgment is not to make credibility determinations, weigh evidence, or draw inferences from facts. *Anderson*, 477 U.S. at 249. Rather, the court must "simply determine whether there is a genuine issue for trial." *Id*.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the

absence of a genuine dispute of any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Additionally, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

**Discussion**

      Defendant argues that it is entitled to summary judgment because the Plaintiff "voluntarily assumed the risk and/or voluntarily encountered an open and obvious condition."  (Brief in Support of Motion for Summary Judgment, Doc. 38, p. 8).  Defendant reaches this conclusion by setting aside Plaintiff's deposition testimony wherein she states that she did not see the sign/chain and was unaware

of its existence prior to her fall and relies on its own interpretation of the video surveillance footage of the event which, it believes, unequivocally refutes Plaintiff's version of the events. (*Id*. at 11-13). Plaintiff, relying on her testimony, argues a genuine issue of material fact exists. (Brief in Opposition to Summary Judgment, Doc. 43, at 8).

"To prevail on a claim of negligence under Pennsylvania law, a plaintiff must establish: "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Johnson v. Penney Opco LLC*, No. 22-CV-3665, 2025 WL 52007, at *2 (E.D. Pa. Jan. 8, 2025) (quoting *Firebaugh v. Pa. Turnpike Comm'n*, 911 A.2d 1264, 1272–73 (Pa. 2006)). Here, the parties do not dispute that the Plaintiff was a customer at the Defendant, Walmart Supercenter. As such, she held the status of a business invitee. "A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land … As a general rule, a possessor of land owes a duty to an invitee to protect him or her from foreseeable harm." *Id*. (cleaned up). In *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), the Supreme Court of Pennsylvania stated:

> Possessors of land owe a duty to protect invitees from foreseeable harm. Restatement, supra, §§ 341A, 343 & 343A. With respect to

5

conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he, "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Restatement, supra, § 343. Thus, as is made clear by section 343A of the Restatement, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement, supra, § 343A.

*Carrender*, 503 Pa. at 185, 469 A.2d at 123.

The parties agree as to the applicable law and essentially cite to the same authority. As referenced above, they disagree was to whether Plaintiff was on notice of the sign/chain before her fall. In concluding that any danger posed by the sign/chain was readily apparent to the Plaintiff, Defendant provides the following narrative interpreting the surveillance video:

> At 5:31:27 of the video, the customer in the red shirt **appears to be looking** down directly at the sign/chain on the ground and speaking to Plaintiff while doing so. Later, at 5:33:13, Plaintiff **appears to be looking directly** down at the sign/chain on the floor. At 5:33:24, Plaintiff again **appears to be looking** directly down at the sign/chain in the aisle while reaching into her purse…
>
> At 5:33:20, Plaintiff **appears to go out of her way** to walk around the sign/chain when moving toward the bagging area when it would have been more convenient and efficient to walk in a direct line to the bagging area over the sign/chain. Plaintiff **appears to**

6

**consciously walk around the sign/chain** a number of additional times while in the checkout aisle prior to her fall…

At 5:34:16, Plaintiff's foot is directly on the sign while she is counting cash. Plaintiff's foot is again on the sign at 5:34:51 and her foot is moving the sign. Plaintiff continues to move the sign/chain with her foot for an additional twelve (12) seconds until she falls at 5:35:03.

(Doc 38, p 11-12) (emphasis added).

Plaintiff points to her deposition testimony to contradict Defendant's account of the events. When asked by Defense Counsel how long the sign and chain were on the floor before she fell, Plaintiff responded "I didn't see that. If I had seen that, I would not fall." (Doc. 37-3, p. 72). Counsel continued:

Q. Okay. That was my next question. Did you see that sign and chain on the ground before your fall?

A. I --- I did not see. If I had seen, I would not have this accident. When I --- my --- when I stepped on top of the sign, the sign has kind of slid underneath me and the chain goes around my foot. And I was looking at something to hold myself, with nothing around me to hold. Then I fell with my back and hit the cashier behind me.

….

Q. Did you have any idea how the sign and chain got onto the floor?

A. No.

Q. Do you think you could have avoided the sign and chain before you fell?

7

>   …
>
>   A. No.

(Doc. 37-3, pp. 72-73). When asked to describe the accident in detail, Plaintiff testified "So this at first, I didn't see the sign. The sign was on --- on the floor and I was talking to the cashier." (Doc. 37-3, p. 74).

The factual dispute at issue in this motion pits the testimony of the Plaintiff against the video evidence, or better stated, the Defendant's account of the video evidence. While "[t]here is no genuine dispute of material fact where video footage unambiguously contradicts a plaintiff's allegations," *Motes v. United States*, No. 1:23-CV-00629, 2025 WL 1870919, at *4 (M.D. Pa. July 7, 2025) (citing *Scott v. Harris*, 550 U.S. 372 (2007)), it cannot be said that this matter lacks any ambiguity. As the Honorable Martin C. Carlson has wisely recognized:

> Often times in litigation the search for the truth entails reconciling what are irreconcilable narratives reflecting the competing views of the parties. In some instances, fact-finders are aided in this task by immutable video evidence depicting what has transpired. 'There are, however, limits on the extent to which the unblinking eye of the video camera can resolve these factual disputes.'

*Abney v. Younker*, No. 1:13-CV-1418, 2019 WL 7812383, at *1 (M.D. Pa. Oct. 3, 2019), report and recommendation adopted, 2020 WL 488894 (M.D. Pa. Jan. 30,

2020) (quoting *Breeland v. Cook*, No. 3:12-CV-2511, 2014 WL 820167, at *2 (M.D. Pa. Mar. 3, 2014).

The Court's characterization of the video footage would make similar observations to those detailed by the Defendant and, more importantly, uses the same verb choice followed by a to-infinitive in describing those observations. That stylistic choice is made from necessity because all that can be said in observing the video is that Plaintiff ***appears to*** be taking certain actions. From the Court's viewing of the video, a female customer wearing a red sweatshirt is seen checking out before the Plaintiff. That customer does indeed at times appear to be looking at the sign and at one point even drops an object on the sign and later retrieves it. While the woman in the red sweatshirt is completing the process of checking out, Plaintiff appears in the video and begins placing her items on the checkout table. As stated by Defendant, it does seem that that the Plaintiff, wearing dark sunglasses, has her attention focused in the direction of the sign when the woman in front of her is paying for her purchases. Plaintiff, wearing a mask, is maintaining a distance from the other customer.[1] When the other customer leaves, Plaintiff begins placing and sorting various items on the checkout table. Her attention appears to be fixed on the cashier. Plaintiff then places very large

---

[1] The fall occurred on October 6, 2020, during the COVID-19 pandemic.

packages of paper products in the area of the cashier. She then, as Defendant speculates, seem to walk around the sign to another part of the checkout area. Plaintiff then engages in a conversation with the cashier about a specific item, then walks back to the large packages of paper products on the checkout table, in doing so, she does appear to step on the sign. With her arms on top of a large package of paper products, she counts money and hands it to the cashier, appearing to be completely focused on the task at hand. Plaintiff then picks up the two large packages of paper products and carries them to the turntable at end of the clack out area. She then quickly walks back to a shopping cart, and, at this point, her foot appears to be firmly planted on the sign. While she is removing items from the cart, her foot gets caught up in the chain and she falls. During this process, Plaintiff does *appear* to be fully preoccupied with removing items from the cart and placing them on the checkout table.

    What the Plaintiff is seeing, processing or thinking about is anyone's guess. To quote Judge Carlson again: "Any assessment of the probative value of video evidence must take into account that the camera, while an immutable witness, can only describe events from the particular perspective of the video's lens. Thus, the camera only allows us to see what the camera observed and recorded, and our assessment of the evidence must be undertaken through the prism of the camera's

10

perspective, subject to all of the vagaries and limitations of that perspective*.*" *Breeland*, 2014 WL 820167, at *4.

In *Motes, supra*, this Court granted summary judgment in favor of the defendant based on video evidence that utterly discredited the plaintiff's version of the events. In *Motes,* the plaintiff tripped and fell while entering the Federal Building in Harrisburg. 2025 WL 1870919, at * 1. She alleged negligence because the United States "allowed snow and ice to accumulate on the sidewalk outside of the Federal Building which caused Plaintiff to slip and fall." *Id*. at * 2. The Court reviewed video footage of the fall which unequivocally demonstrated that there was no snow or ice in the area where plaintiff fell. Accordingly, it granted summary judgment in favor of the defendant. *Id*. at *3. In *Motes*, the issue was clear and capable of easy determination, *viz*., whether there was snow and/or ice on the sidewalk. A review of video evidence could quickly and definitively resolve that issue. Here, the issue is less capable of resolution. While the video might be able to capture the apparent direction of Plaintiff's gaze, it cannot capture the complex process of her perception.

"The question of whether a danger was known or obvious is generally 'a question of fact for the jury, [but] the question may be decided by the court where reasonable minds could not differ as to the conclusion.'" *Perry v. Sam's E., Inc.*,

No. 1:21-cv-301, 2023 WL 5308322, at *5 (W.D. Pa. Aug. 17, 2023) (quoting *Carrender*, 469 A.2d at 124).  Here, the issue must be decided by the jury.  The Court has reviewed the video as well as the deposition testimony of the Plaintiff and it cannot be said that reasonable minds cannot differ as to whether the sign and chain were a known and obvious danger.  Further, even if so, a jury would be left to decide whether the Defendant "should [have] anticipate[d] the harm despite such knowledge or obviousness." *Carrender*, 469 A.2d at 123 (quoting Restatement § 343A).

This conclusion is supported by a recent decision in the Western District of Pennsylvania addressing a similar issue.  In *Knepp v. Wal-Mart Stores E., L.P.*, No. 3:22-CV-144, 2025 WL 660630 (W.D. Pa. Feb. 28, 2025), the Plaintiff, Knepp, tripped on the corner of a pallet protruding from a watermelon display at a Wal-Mart store in Clearfield.  Wal-Mart argued that "the display constituted a dangerous condition and that the same was an open and obvious condition that Knepp failed to recognize by using reasonable care for his own safety." *Id*. at * 1.  In rejecting that argument and denying the motion the Court stated:

> Walmart has failed to demonstrate that summary judgment is appropriate because there are material facts in dispute between the parties as to the whether the low-lying pallet corner protruding from the watermelon display was a dangerous condition, if it was an open and obvious condition that Knepp should have avoided with

12

> the exercise of reasonable care for his own safety, and if Walmart should have anticipated that Knepp would be distracted by carrying a watermelon he obtained from the display causing him to not see or protect himself from tripping over the pallet corner.

*Id.* at *2. Of note, the Court explained:

> [E]ven if the Court agreed with Walmart that the pallet protruding from the watermelon display was an open and obvious condition, summary judgment would still not be warranted because a reasonable jury may conclude that Walmart should have anticipated the harm despite such knowledge or obviousness… In this regard, Walmart is not relieved of its duty of care for open and obvious dangers when it has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.

*Id.* at * 5 (cleaned up).

A jury in this matter could believe the Plaintiff's testimony and find that she was unaware of the sign and chain before she fell. However, even if the jury finds that she saw the sign, like the Plaintiff in *Knepp*, a jury could also find that Defendant had reason to expect that Plaintiff's attention was distracted, so that she did not discover or forgot or failed to protect herself from the obvious danger. In *Knepp*, the Court focused on the tasks involved in shopping for the watermelon, "including selecting a watermelon, reaching into the box to pick it up and carrying it away from the display" and concluded those tasks "may have caused him to not

13

discover the protruding pallet corner near his feet, forget about it if he was aware of it, and/or fail to protect himself from the danger it presented." *Id*. at *5. The same could be said here. Even if Plaintiff noticed the sign, she could have been so involved in taking her items out of the cart, placing them on the checkout table, talking with the cashier, retrieving her and counting her money and, collecting her purchased that she became understandable distracted, or at least a jury could so conclude.

The video shows that in opening the checkout lane, the Walmart employee simply placed the sign and chain on the floor in the path of customers checking out and made no effort to clear the path for customers leaving the store. A possessor of land can be liable for an invitees' physical harm caused by "condition on the land whose danger is known or obvious" when "the possessor should anticipate the harm despite such knowledge or obviousness." *Carrender*, 503 Pa. at 185, 469 A.2d at 123 (quoting Restatement, supra, § 343A). Whether Walmart should have anticipated the harm posed by the chain and sign obstructing the checkout lane even if it were obvious is a matter for the jury to decide

**Conclusion**

"[C]ourts have repeatedly found that the question of whether a plaintiff should have known about a certain dangerous condition is reserved for the jury

14

unless reasonable minds cannot differ as to the plaintiff's negligence." *Nixon v. Fam. Dollar Stores of Pennsylvania, LLC*, No. 4:20-CV-00404, 2021 WL 2015188, at *5 (M.D. Pa. May 20, 2021) (citing *Devlin v. Home Depot USA, Inc.*, No. 3:12-CV-00766, 2013 WL 6835409, at *4-5 (M.D. Pa. Dec. 23, 2013) (finding summary judgment inappropriate where reasonable minds could differ as to whether a forklift was sufficiently obvious); *Collie v. Wal-Mart Stores East, L.P.*, No. 1:16-CV-227, 2017 WL 1243168, at *6-7 (M.D. Pa. Feb. 1, 2017) (denying a motion for summary judgment where a plaintiff tripped over a curb where a genuine dispute existed regarding the obviousness of the curb); *Lissner v. Wal-Mart Stores East, L.P.*, No. 2:07-CV-414, 2009 WL 499462, at *3 (W.D. Pa. Feb. 27, 2009) ("[T]he location of the post precludes a determination that any tripping hazard it created was obvious as a matter of law.")). "As a result, it is generally inappropriate to grant summary judgment when factual disputes exist regarding the obviousness of a given condition. This is true even where a plaintiff has admitted that they were distracted or were not looking where they were going." *Id.* at *5.

  Based on the foregoing, the Court finds that reasonable minds can differ as to the obviousness of sign and chain and whether the Plaintiff was aware of them before her fall and that questions of fact remain for the jury. Further it will remain for the jury to decide whether Walmart should have anticipated the harm posed by

a sign and chain inexplicably placed in the checkout area where customers would have to pass after completing their purchases even if the danger was obvious. Accordingly, the Motion for Summary Judgment will be denied. An appropriate Order will issue.

Dated: October 7, 2025                              /s/ **Leo A. Latella**
                                                    Leo A. Latella
                                                    United States Magistrate Judge